# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,
STATE OF WISCONSIN, STATE OF ILLINOIS,
and STATE OF MICHIGAN,

          Plaintiffs,

v.                                                         Case No. 10-CV-59

DEAN FOODS COMPANY,

          Defendant.

_____

## ORDER

On January 22, 2010, plaintiffs filed a two-count complaint against the defendant, Dean Foods Company ("Dean"). Both counts alleged violations of Section 7 of the Clayton Act, 15 U.S.C. § 18. On February 18, 2010, defendant file a motion to dismiss count two of the complaint, or in the alternative, to require plaintiffs to provide a more definite statement as to this claim. After consideration of the parties' briefs regarding the motion, the court determines that defendant's motion should be denied.

## BACKGROUND

According to the complaint, Dean's Dairy Group is the country's largest processor and distributor of milk and other dairy products. Dairy processors purchase raw milk from producers, pasteurize and package the milk, and then distribute and sell the processed product, which is termed "fluid milk."

Dairy processors supply fluid milk directly to retailers, distributors, food service companies, and institutions. According to the complaint, the vast majority of fluid milk is sold directly by processors to retailers. Additionally, dairy processors often charge different prices to different purchasers for the same product based on a variety of factors, including the number of competitive alternatives available to the purchaser.

Plaintiffs state that for the last several years, Foremost USA ("Foremost") – a dairy cooperative headquartered in Baraboo, Wisconsin – was a significant competitor of Dean's in the geographic area of Wisconsin, northeastern Illinois, and Michigan's Upper Peninsula ("the U.P."). As a dairy cooperative, Foremost's chief goal was to move its members milk, rather than to realize high profits. Thus, Foremost priced its fluid milk very aggressively. This aggressive pricing, in turn, according to plaintiffs, constrained Dean's pricing levels.

On April 1, 2009, Dean bought substantially all of Foremost's Consumer Products Division's assets for $35 million. Plaintiffs assert that as a result of this acquisition ("the Acquisition"), Dean now has more than 57 percent of all fluid milk sales in the relevant geographic area (i.e., the area consisting of the U.P., Wisconsin, and northeastern Illinois[1]). Plaintiffs maintain that the Acquisition will likely substantially lessen competition among fluid milk producers in the relevant geographic market, resulting in higher fluid milk prices to purchasers than would

---

[1] "Northeastern Illinois" is defined in the complaint as the following counties: Cook, DeKalb, DuPage, Grundy, Kane, Kendall, Lake, McHenry, and Will.

have existed in the absence of the Acquisition. Thus, plaintiffs maintain that the Acquisition violated Section 7 of the Clayton Act, and that the court should thus compel Dean to divest all of the assets and interests it acquired as part of the Acquisition.

**ANALYSIS**

"Section 7 of the Clayton Act forbids mergers in any line of commerce where the effect may be substantially to lessen competition or tend to create a monopoly." *U.S. v. Falstaff Brewing Corp.*, 410 U.S. 526, 531 (1973). In determining the likely anti-competitive effects of an acquisition, courts look to the relevant product market, as well as the relevant geographic market. Ascertaining a relevant product market requires a multi-factored analysis; however, "[t]he outer boundaries of a product market are determined by the interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). The relevant geographic market is "the narrowest market which is wide enough so that products from adjacent areas cannot compete on substantial parity with those included in the market." *Westman Comm'n Co. v. Hobart Int'l, Inc.*, 796 F.2d 1216, 1222 (10th Cir.1986) (quotation marks and alterations omitted). It "is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product." *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 726 (3rd Cir.1991).

In the instant case, the parties agree that "fluid milk" aptly describes the relevant product market. There is no argument that other milk products, such as powdered milk or soy milk, are reasonable substitutes for fluid milk. Rather, the only arguments raised by defendant regard the adequacy of plaintiffs' pleadings regarding the relevant geographic market. In this regard, Dean maintains that plaintiffs have not sufficiently pled a relevant geographic market for fluid milk, and thus count two of the complaint should be dismissed, or, in the alternative, the court should require plaintiffs to submit a more definite statement.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the plaintiffs' complaint by asserting that the claimants failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), claimants' complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). Pleaders must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 1129 S.Ct. at 1940. However, the court construes the complaint in the light most favorable to the claimants, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the claimants' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

A motion for a more definite statement under Fed. R. Civ. P. 12(e) allows a party to seek a more definite statement from an opposing party when a pleading is so vague or ambiguous that the moving party cannot reasonably respond. However, "because of the many discovery procedures presently available to litigants in federal courts, district judges are admonished to exercise their discretion sparingly in ordering more definite statements." *Scarbrough v. RWay Furniture Co.*, 105 F.R.D. 90, 91 (E.D. Wis.1985). Thus, Rule 12(e) motions are appropriate for situations where "a complaint is unintelligible, and not for when a defendant just wants more detail." *Dental Health Products, Inc. v. Ringo*, 2009 WL 1076883, 9 (E.D. Wis. 2009). Resultingly, Rule 12(e) motions are generally disfavored, rarely granted, and should only be used to "clear up confusion and not to replace traditional discovery." *Direct Communications, Inc v. Horizon Retail Const., Inc.*, 387 F .Supp.2d 828, 831 (N.D. Ill. 2005).

Dean critiques the premise on which plaintiffs' proposed geographic market is based, and criticizes the sufficiency with which it is defined. According to the plaintiffs: "Wisconsin, the U.P., and northeastern Illinois comprise the region in which Dean and Foremost competed for fluid milk sales prior to the Acquisition." (Pl. Resp. Mot. Dismiss at 10). Defendant argues vehemently that this is an improper basis for defining the relevant geographic area. Defendant cites *United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) for the proposition that "[t]he proper question to be asked . . . is not where the parties to the merger do business or even where they compete,

-5-

but where . . . the effect of the merger on competition will be direct and immediate." *Id.* at 357.

However, just because the geographic area where the parties competed is not necessarily the relevant geographic market, that does not mean that it therefore cannot be the relevant geographic market. In the instant case, plaintiffs alleged that the presence of Foremost as an aggressive price competitor constrained defendant's ability to raise its prices. The Acquisition of Foremost by defendant will obviously remove that constraint. Thus, the effect of the merger will be direct and immediate in the geographic area where the previous price constraint existed, but no longer does – i.e., areas where defendant previously had to compete with Foremost, but no longer has to do so.

Of course, as previously stated, "[t]he geographic market is not comprised of the region in which the seller attempts to sell its product, but rather is comprised of the area where his customers would look to buy such a product." *Tunis Bros. Co.*, 952 F.2d at 726. Thus, if customers would likely turn to other processors (either inside the geographic area or outside the geographic area) in the event defendant raised its prices, then those other processors would act as a constraint on defendant's ability to raise prices the same as Foremost once did. This brings the court to the second criticism levied by defendant against plaintiffs' complaint: that the complaint does not properly define the relevant geographic market.

According to the U.S. Department of Justice's Horizontal Merger Guidelines ("Merger Guidelines")[2] there are two tests, either one of which may be used to define a relevant geographic market. The first test, described in section 1.21 of the Merger Guidelines, focuses on the available sources of supply, and it would require the relevant market to include all production locations that a hypothetical monopolist would have to control in order to be able to impose a market-wide significant price increase. The second test, described in section 1.22, focuses on a hypothetical monopolist's ability to impose a small but significant and nontransitory increase in price ("SSNIP") on certain targeted buyers. This is known as a price discrimination market. If the targeted buyers could not defeat the price increase either by turning to more distant sellers, or by buying from other customers upon whom the price increase was not imposed (i.e., through arbitrage), then the locations of the targeted buyers would comprise a relevant geographic market (or several relevant geographic markets).

Plaintiffs' response brief to defendant's motion makes it clear that its geographic market definition is premised only on section 1.22. Defendant asserts that plaintiffs have not sufficiently pled: 1) the identities and particular locations of customers that defendant could target for price discrimination; 2) that targeted customers could not defeat a SSNIP by turning to more distant sellers; and 3) that targeted customers could not defeat a SSNIP through arbitrage.

---

[2] The Merger Guidelines are not binding on the courts; however, they are considered to be persuasive authorities. *Chicago Bridge & Iron Co. N.V. v. F.T.C.*, 534 F.3d 410, 434 n.13 (5th Cir. 2008).

-7-

Plaintiffs' complaint does not identify individual customers and those customers' particular locations. However, it does identify the area in which the Acquisition will allegedly enable defendant to impose supracompetitive prices. The fact that the particularized locations of probable price discrimination victims are not detailed neither warrants dismissal under 12(b)(6) nor an order for a more definite statement under 12(e). While the test set out in Merger Guidelines section 1.22 is relevant to the court's inquiry, it is not binding on the court. *Chicago Bridge & Iron Co. N.V.*, 534 F.3d at 434 n. 13. Additionally, the Merger Guidelines themselves reject a mechanical application of the guidelines, and instead teach that they should be applied "reasonably and flexibly to the particular facts and circumstances of each proposed merger." *Id.* at 434 n. 14 (citations omitted). Further, neither of defendant's briefs, nor any of the court's own independent research, has revealed any instance of a court granting dismissal of a Clayton Act claim as a result of failure to plead a geographic market with the type of specificity sought by defendant. Indeed, the determination of the relevant geographic market "is essentially one of fact, turning on the unique market situation of each case." *H.J., Inc. v. Int'l Telephone & Telegraph Corp.*, 867 F.2d 1531, 1537 (8th Cir. 1989). Thus, the court simply has no basis to impose the type of highly specific pleading standard advocated by the defendant.

Similarly, the complaint is not so vague as to the relevant geographic area as to prevent defendant from being able to reasonably respond. If defendant agrees

-8-

that "for many purchasers [in Wisconsin, the U.P., and northeastern Illinois] the prices they pay and/or services they receive will be adversely affected by the Acquisition," (Compl. ¶ 46) then they can admit as much, if they disagree then they can deny as much. An enumeration of each purchaser likely to be so affected is in no way necessary for defendant to be able to determine whether or not it agrees that the Acquisition will have the alleged effect.

In support of the notion that targeted customers could not defeat a SSNIP by turning to more distant sellers, plaintiffs alleged:

> Distance between processors and purchasers is an important consideration in fluid milk pricing because fluid milk has a limited shelf life and is costly to transport. These costs result in most customers purchasing fluid milk from nearby processing plants. For example, more than 90 percent of milk sold to customers in Wisconsin and the UP traveled less than 150 miles from the plant in which it was processed.

(Compl. ¶ 15). This allegation, when accepted as true, makes it plausible that targeted customers will not be able to defeat a SSNIP by turning to more distant sellers. Additionally, plaintiffs alleged that "[e]ntry [of new competitors] is unlikely to be sufficient or timely enough to offset the anticompetitive effects of the Acquisition." (Compl. ¶ 52). This allegation, when accepted as true, makes it plausible that targeted customers will not be able to defeat a SSNIP by turning to new competitors in the market.

Defendant attacks the sufficiency of plaintiffs' pleading by stating that it only alleges that currently customers do not turn to more distant sellers, but not that they

-9-

would not do so in the event of an imposition of a SSNIP. However, when "examin[ing] the complaint as a whole," *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001), rather than in a piecemeal fashion, it is clear that the complaint is alleging that defendant, as a result of the Acquisition will be able to impose a SSNIP on targeted customers that such customers will not be able to defeat through recourse to more distant sellers. Of course, it would have been better if plaintiffs used those exact words in their complaint; however, the court does not require plaintiffs to include magic words in order to survive a motion to dismiss.

In support of the notion that targeted customers could not defeat the imposition of a SSNIP through arbitrage, plaintiffs have alleged that fluid milk "has a limited shelf life and is costly to transport," (Compl. ¶ 15), and that "[r]etailers in [the relevant geographic area] do not resell fluid milk to other retailers or institutions in any substantial quality," (Compl. ¶ 13). These allegations, when taken as true, make it plausible that customers targeted for price discrimination would not be able to defeat such price discrimination through arbitrage.

Dean challenges the sufficiency of the pleading by pointing out that the complaint states that "[d]istributors and food service companies resell the milk that they purchase from processors to small retailers, restaurants, and institutions." (Compl. ¶ 13). While this allegation calls into question whether targeted customers would be unable to defeat price discrimination through arbitrage with distributors and food service companies, it does not render the notion, that they would not be able

-10-

to do so, implausible. This is especially true if one accepts the complaint's allegation (which one must do at this stage of the litigation) that "the vast majority of fluid milk is sold directly by processors to retailers." (Compl. ¶ 13). Thus, even if distributors and food service companies were willing and able to resell to retailers, it is plausible that they would not be able to meet the demand. Dean further argues that the complaint's statement that customers who purchase from a price list, as opposed to through a bidding process, sometimes obtain rebates, discounts, or other forms of price relief, supports the notion that targeted customers could defeat imposition of a SSNIP through arbitrage. Such price relief measures could conceivably facilitate arbitrage, or, alternatively, they could be used by defendant as an incentive to discourage customers from engaging in arbitrage. These are factual questions that the court is not going to examine at this stage. Suffice it to say that plaintiffs have alleged sufficient facts to make it plausible that targeted customers could not defeat price discrimination through arbitrage.

Similarly there is nothing about the complaint's allegations regarding customers' ability to turn to outside sellers or engage in arbitrage that is so vague that defendant cannot reasonably respond. To the extent that Dean seeks additional factual support for these premises, it may do so through the discovery process.

## CONCLUSION

In today's world, structural issues, together with a lack of specificity in content associated with the underlying complaint, simply do not measure up to that which any court would reasonably expect in draftsmanship from an experienced litigator.[3] That said, the court finds these shortcomings not to be of sufficient magnitude to warrant either dismissal or a more definite statement. In the end, although not well structured, all relevant factual predicates have been pled allowing Dean to reasonably respond to the complaint.

Accordingly,

**IT IS ORDERED** that defendant's Motion to Dismiss or, in the Alternative, for a More Definite Statement (Docket #15) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 7th day of April, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[3] Perhaps one of the most troubling aspects of plaintiffs' complaint is that it is not electronically searchable. Likewise, plaintiffs' response brief is also not electronically searchable. To be sure, these shortcomings significantly increased the amount of time and resources necessary to address the instant motion. Plaintiffs are not pro se litigants. There can be no excuse for submitting non-electronically searchable documents to the court. Thus, counsel are reminded that all future filings submitted by the parties must be electronically searchable (documents filed under seal may be submitted on a CD in an electronically searchable format).

-12-