# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

UNITED STATES OF AMERICA,
STATE of WISCONSIN,
STATE of ILLINOIS, and
STATE of MICHIGAN,

   *Plaintiffs*,

   *v.*          Civil Action No. 2:10-cv-00059 (JPS)

DEAN FOODS COMPANY,

   *Defendant*.

## MOTION AND MEMORANDUM OF THE UNITED STATES
## IN SUPPORT OF ENTRY OF THE PROPOSED FINAL JUDGMENT

Pursuant to Section 2(b) of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA" or "Tunney Act"), the United States moves for entry of the proposed Final Judgment in this civil antitrust action. The Court may enter the proposed Final Judgment, a copy of which is attached as Exhibit A, at this time without further hearing if the Court determines that entry is in the public interest. Defendant Dean Foods Company ("Dean") agrees to the entry of the proposed Final Judgment without a hearing. The Competitive Impact Statement ("CIS"), filed in this matter on March 29, 2011 (Dkt. Entry #71), explains why entry of the proposed Final Judgment would be in the public interest. The United States' Certificate of Compliance, which is attached as Exhibit B, sets forth the steps that the parties have taken to comply with all applicable provisions of the APPA and certifies that the statutory waiting period has expired.

## I. Procedural History of the Action.

On January 22, 2010, the United States and its three co-plaintiffs filed the Complaint in this action challenging Dean's acquisition of milk processing assets from Foremost Farms USA ("Foremost"). The Complaint alleges that the acquisition violates Section 7 of the Clayton Act, 15 U.S.C. § 18.

On March 29, 2011, the United States, its co-plaintiffs, and Dean filed a proposed Final Judgment with the Court that addresses the anticompetitive effects alleged in the Complaint. Section IV of the proposed Final Judgment requires Dean to divest the milk processing plant located in Waukesha, Wisconsin (the "Waukesha Plant"). The United States, its co-plaintiffs, and Dean have stipulated that the Court may enter the proposed Final Judgment at any time after compliance with the APPA. (Stip. at 4, Dkt. Entry 70.)

Entry of the proposed Final Judgment will terminate this action, except that the Court will retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and to punish violations thereof.

## II. The United States and Dean have complied with the APPA.

The APPA requires a sixty-day period for the submission of public comments on a proposed Final Judgment. 15 U.S.C. § 16(b). In compliance with the APPA, the United States filed the proposed Final Judgment and CIS on March 29, 2011. (Dkt. Entry 70-2, 71.) The United States published the proposed Final Judgment and CIS in the Federal Register on April 5, 2011 (*United States, et al. v. Dean Foods Company*, 76 Fed. Reg. 18,783). Summaries of the CIS and the terms of the proposed Final Judgment, and directions for the submission of written comments relating to the proposed Final Judgment, were published in the *Washington Post* for seven days beginning on April 2, 2011, and ending on April 8, 2011, and in the *Milwaukee*

2

*Journal Sentinel* for seven days during the time period of April 2, 2011, through April 15, 2011.

The sixty-day public comment period ended on June 14, 2011. The United States received no public comments during the sixty-day period. Two weeks after the end of the comment period, the United States received an e-mail from Mr. Chris Olsen pertaining to the proposed Final Judgment. A copy of Mr. Olsen's e-mail is attached hereto as Exhibit C. Even though Mr. Olsen's correspondence was submitted to the United States after the statutory comment period, the United States has analyzed the points that Mr. Olsen raised in his e-mail and, as explained below, determined that nothing in it suggests that a change in the proposed Final Judgment is appropriate or that entry of the Final Judgment is not in the public interest.

As stated in the Certificate of Compliance, all of the requirements of the APPA have been satisfied. It is now appropriate for the Court to make the public interest determination required by 15 U.S.C. § 16(e) and to enter the proposed Final Judgment.

### III. Standard of Review.

In the CIS, the United States explained how the proposed Final Judgment addresses the harm to competition caused by Dean's acquisition. Section VII of the CIS describes the meaning and proper application of the public interest standard under the APPA, and the United States incorporates those statements herein by reference.

### IV. The Proposed Final Judgment is in the Public Interest.

### A. Divestiture of the Waukesha Plant cures the Alleged Harm.

The proposed Final Judgment is in the public interest because the divestiture of the Waukesha Plant will enable the buyer to effectively compete for the business of the vast majority of the population in the relevant geographic market pleaded in the Complaint. The proposed Final Judgment requires Dean to divest all tangible assets that comprise the Waukesha Plant milk

3

business and all intangible assets used in the development, production, servicing, and sale of fluid milk and other dairy products for the Waukesha Plant. Further, the assets will give the buyer of the Waukesha Plant a distribution network, an established customer base, and a brand with strong equity — Golden Guernsey.

Of the two plants that Dean acquired from Foremost, the Waukesha Plant produces more milk, has more total capacity to produce milk, has more excess capacity, and is located closer to major population centers, including Milwaukee and Chicago. Distance between processors and customers is an important consideration in fluid milk pricing because fluid milk has a limited shelf life and is costly to transport. These costs result in most customers purchasing fluid milk from nearby processing plants. For example, more than 90 percent of the milk sold to customers in Wisconsin and the Upper Peninsula of Michigan ("UP") travels less than 150 miles from the plant in which it is processed. Ninety-two percent of the population of the relevant fluid milk geographic market lives within 150 miles of the Waukesha Plant, and 80% of public school children in Wisconsin and the UP are enrolled in school districts within 150 miles of the Waukesha Plant.[1] The Waukesha Plant serves some of the largest fluid milk customers in Chicago and other areas of the relevant geographic market.

As stated, the Waukesha Plant also has significant excess capacity. Its excess capacity will enable it to serve additional customers of all sizes in the relevant geographic market and will give the buyer of the Waukesha Plant the incentive to compete aggressively for new business.

---

[1] The State of Michigan and Dean have entered into a separate settlement agreement with respect to school milk sales in the UP. The agreement includes a pricing mechanism that sets a maximum school milk bid price based on the prices that Dean charged for school milk during 2010.

4

**B. Nothing in Mr. Olsen's correspondence suggests that the proposed Final Judgment is not in the public interest.**

None of the three points that Mr. Olsen raises in his correspondence claims that the proposed Final Judgment fails adequately to redress the violations and competitive harm alleged in the Complaint.

First, Mr. Olsen expresses concern about the future purchaser of the Waukesha Plant, maintaining that "there are only a few viable players to buy and sustain the plant." He says that he is unaware of anyone other than DFA-Kemps ("Kemps") that appears qualified to operate the Waukesha Plant.

Mr. Olsen's concern about the identity of and the number of qualified buyers does not concern the adequacy of the remedy contained in the proposed Final Judgment, and therefore is outside the scope of a Tunney Act proceeding. *See United States v. InBev N.V./S.A.*, 2009-2 Trade Cas. (CCH) ¶ 76,736, 2009 U.S. Dist LEXIS 84787, No. 08-1965 (JR), at *23 (D.D.C. Aug. 11, 2009). Moreover, the proposed Final Judgment fully accounts for Mr. Olsen's concern that Dean divests the Waukesha Plant to a buyer that will operate the plant effectively and competitively. Under the terms of the proposed Final Judgment, the United States has the obligation to approve any proposed buyer of the Waukesha Plant. (Proposed F. Jmt. at §§ IV.A, V.B.) The United States will only approve a proposed buyer that will likely restore competition and effectively compete long term in the affected markets. The United States must be satisfied that the proposed buyer will use the assets "as part of viable, ongoing Fluid Milk and School Milk processing businesses" and that the proposed buyer "has the intent and capability" of competing effectively for Fluid Milk and School Milk sales. (*Id.* at §§ IV.H, IV.H.1.) The United States must also ensure that the proposed terms of sale do not hinder the proposed buyer's ability to compete effectively. (*Id.* at § IV.H.2.) Finally, based upon a review of the companies

5

seeking to buy the Divestiture Assets, the United States has determined that it is likely that a qualified buyer will purchase the Divestiture Assets.

Next, Mr. Olsen states that instead of the divestiture that the proposed Final Judgment requires, he would prefer that the United States "reach an arm's length monitored operating agreement w[ith] Dean[ ]" to ensure competition. The United States understands Mr. Olsen to mean that the United States and Dean should settle the case by entering into an agreement in which Dean will continue to own the Waukesha Plant, and the United States will oversee the operations of the Waukesha Plant for the purpose of ensuring that Dean competes aggressively in the relevant geographic market.

Mr. Olson's preference that the United States regulate or oversee Dean does not indicate that the Final Judgment is not in the public interest. Courts consider divestitures the most effective method for restoring competition lost by the merger of competitors. The Supreme Court has said that "[d]ivestiture has been called the most important of antitrust remedies. It is simple, relatively easy to administer, and sure. It should always be in the forefront of a court's mind" when fashioning a remedy in a merger case. *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 330-31 (1961); *accord California v. Am. Stores Co.*, 495 U.S. 271, 280-81 (1990) ("[D]ivestiture is the preferred remedy for an illegal merger.").

Even assuming that a divestiture is not the ideal remedy in this case, "a court may not reject a remedy simply because it may not be, in the court's view, the best remedy available." *United States v. Republic Serv.*, 723 F. Supp. 2d 157, 160 (D.D.C. 2010) (internal alterations and quotation marks omitted). Rather, to satisfy the public interest standard, the United States needs to demonstrate "that the settlement is a reasonably adequate remedy for the harms alleged in the complaint." *Id.* (citing *United States v. Abitibi-Consol. Inc.*, 584 F. Supp. 2d 162, 165 (D.D.C.

6

2008)).  The divestiture contained in the proposed Final Judgment is, at minimum, reasonably

adequate to remedy the harm pleaded in the Complaint.  As stated, the Waukesha Plant has

excess capacity and can serve over 90% of the population living in the relevant geographic

market, including the entirety of the metropolitan areas of Milwaukee, Chicago, Green Bay, and

Madison.

Finally, Mr. Olsen challenges the United States' decision to sue Dean, contending that

"Dean has done nothing wrong."  He believes that the suit brought by the United States and its

co-plaintiffs reflect "simply human nature and speculation."  These arguments are outside the

scope of this APPA because, in a Tunney Act "public interest" proceeding, the district court

should not second guess the prosecutorial decisions of the United States regarding the nature of

the claims brought in the first instance; "rather, the court is to compare the complaint filed by the

United States with the proposed consent decree and determine whether the proposed decree

clearly and effectively addresses the anticompetitive harms initially identified."  *United States v.*

*The Thompson Corp.*, 949 F. Supp. 907, 913 (D.D.C. 1996); *accord United States v. Microsoft*

*Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995) (In an APPA proceeding, the "district court is not

empowered to review the actions or behavior of the Department of Justice; the court is only

authorized to review the decree itself.").

7

## IV. Conclusion.

For the reasons set forth in this Motion and Memorandum and in the CIS, the Court should find that the proposed Final Judgment is in the public interest and should enter the proposed Final Judgment without further hearings.  The United States respectfully requests that the Court enter the proposed Final Judgment as soon as possible.

Dated: July 20, 2011

Respectfully submitted,

| | |
|---|---|
| /s/ Karl D. Knutsen | James L. Santelle |
| Jon B. Jacobs | United States Attorney |
| Karl D. Knutsen | By: /s/ Susan M. Knepel |
| Ryan M. Kantor | Susan M. Knepel |
| Paul J. Torzilli | Assistant United States Attorney |
| United States Department of Justice | State Bar Number: 1016482 |
| Antitrust Division | 530 Federal Courthouse |
| 450 Fifth St., NW, Suite 4100 | 517 E. Wisconsin Avenue |
| Washington, DC 20530 | Milwaukee, WI 53202 |
| Telephone: (202) 514-0976 | Telephone: (414) 297-1700 |
| E-mail: karl.knutsen@usdoj.gov | E-mail: susan.knepel@usdoj.gov |

8