# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,
STATE OF WISCONSIN,
STATE OF ILLINOIS,
and STATE OF MICHIGAN,

        Plaintiffs,

v.                               Case No. 10-CV-59

DEAN FOODS COMPANY,

        Defendant.

_____

## FINAL JUDGMENT

WHEREAS, Plaintiffs filed their Complaint on January 22, 2010, and Plaintiffs and Defendant, by their respective attorneys, have consented to the entry of this Final Judgment without trial of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendant agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendant to assure that competition is not substantially lessened;

AND WHEREAS, Plaintiffs require Defendant to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendant has represented to Plaintiffs that the divestitures required below can and will be made and that Defendant will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.

## Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states claims upon which relief may be granted against Defendant under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.

## Definitions

As used in this Final Judgment:

(A) "Acquirer" means the person or entity to whom Defendant divests the Divestiture Assets.

(B) "Dean Foods" means Defendant Dean Foods Company, a Delaware corporation with its headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

(C) "Divestiture Assets" means the Waukesha Plant, as defined below, and all related assets for the Waukesha Plant (except for those specified in Section II(C)(3) below), including:

(1) All tangible assets that comprise the Waukesha Plant business, including all property and contract rights, research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, vehicles and other rolling stock, and other tangible property and all assets used in connection with the plant; all licenses, permits and authorizations issued by any governmental organization relating to the plant; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, relating to the plant, including agreements with suppliers and with distributors; all customer lists and related customer information, contracts, accounts (including accounts receivable), and credit records; and all repair and performance records and all other records relating to the plant; and

(2) All intangible assets used in the development, production, servicing, and sale of Fluid Milk and other dairy products for the Waukesha Plant, including, but not limited to, all patents, licenses and sublicenses, copyrights, trademarks, trade names (including the Golden Guernsey and La Vaca Bonita brands and all related materials), service marks, service names, and other intellectual property; technical information, computer software and

related documentation; know-how and recipes; trade secrets; drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Defendant provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts relating to the Divestiture Assets, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

(3) The term "Divestiture Assets" does not include: (a) the right to purchase raw milk from Foremost Farms USA Cooperative for processing at the Waukesha Plant obtained under the Milk Supply Agreement entered into on April 1, 2009 between Foremost Farms USA Cooperative and GG Acquisition, LLC; (b) any ice cream mix filler equipment used at the Waukesha Plant or any other equipment at that Plant dedicated solely to the manufacturing of ice cream mix; or (c) the Dean and Farm Fresh brands and all related materials.

(D) "Fluid Milk" means raw milk that has been processed for human consumption as a beverage, but does not include organic milk, soy milk, extended shelf life milk, ultra-high temperature milk, or aseptic milk.

(E) "Plaintiff States" means the States of Wisconsin, Illinois, and Michigan.

(F) "School Milk" means Fluid Milk produced, marketed, distributed, or sold for use by schools.

(G) "Waukesha Plant" means Defendant's dairy processing plant located at 2101 Delafield Street, Waukesha, Wisconsin 53188-2299.

### III.

### Applicability

(A) This Final Judgment applies to Dean Foods, as defined above, and all other persons in active concert or participation with Dean Foods who receive actual notice of this Final Judgment by personal service or otherwise.

(B) If, prior to complying with Section IV or V of this Final Judgment, Defendant sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, it shall require the purchaser to be bound by the provisions of this Final Judgment. Defendant does not need to obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

### IV.

### Divestitures

(A) Defendant is ordered and directed, within ninety (90) calendar days after the filing of the Proposed Final Judgment or five (5) calendar days after entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture

Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States in its sole discretion, after consultation with the Plaintiff States. The United States in its sole discretion, after consultation with the Plaintiff States, may agree to one or more extensions of this time period not to exceed thirty (30) calendar days in total, and shall notify the Court in such circumstances. Defendant agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

(B)     In accomplishing the divestiture ordered by this Final Judgment, Defendant promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendant shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendant shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendant shall make available such information to Plaintiffs at the same time that such information is made available to any other person.

(C)     Defendant shall provide the Acquirer and Plaintiffs with information relating to the personnel involved in the operation and sale of the Divestiture Assets to enable the Acquirer to make offers of employment. Defendant will not interfere

with any negotiations by the Acquirer to employ any Defendant employee whose primary responsibility relates to the Divestiture Assets.

(D)     Defendant shall permit prospective Acquirers of the Divestiture Assets to have reasonable (1) access to personnel and to make inspections of the physical facilities of the Waukesha Plant; (2) access to any and all environmental, zoning, and other permit documents and information; and (3) access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

(E)     Defendant shall warrant to the Acquirer that the Divestiture Assets will be operational on the date of sale.

(F)     Defendant shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

(G)     Defendant shall warrant to the Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, Defendant will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

(H)     Unless the United States in its sole discretion, after consultation with the Plaintiff States, otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy

the United States in its sole discretion, after consultation with the Plaintiff States, that the Divestiture Assets can and will be used by the Acquirer as part of viable, ongoing Fluid Milk and School Milk processing businesses. The divestitures, whether pursuant to Section IV or Section V of this Final Judgment:

(1) shall be made to an Acquirer that, in the sole judgment of the United States, after consultation with the Plaintiff States, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the sale of Fluid Milk and School Milk; and

(2) shall be accomplished so as to satisfy the United States in its sole discretion, after consultation with the Plaintiff States, that none of the terms of any agreement between an Acquirer and Defendant give Defendant the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V.

### Appointment of Trustee

(A) If Defendant has not divested the Divestiture Assets within the time period specified in Section IV(A), Defendant shall notify Plaintiffs of that fact in writing. Upon application of the United States in its sole discretion, after consultation with the Plaintiff States, the Court shall appoint a trustee selected by the United

States, after consultation with the Plaintiff States, and approved by the Court to effect the divestiture of the Divestiture Assets.

(B) After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States in its sole discretion, after consultation with the Plaintiff States, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendant any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

(C) Defendant shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendant must be conveyed in writing to Plaintiffs and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

(D) The trustee shall serve at the cost and expense of Defendant, on such terms and conditions as the United States in its sole discretion, after consultation with the Plaintiff States, approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After

-9-

approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendant and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

(E) Defendant shall use its best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendant shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendant shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

(F) After its appointment, the trustee shall file monthly reports with Plaintiffs and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the

-10-

Case 2:10-cv-00059-JPS   Filed 07/29/11   Page 10 of 20   Document 80

Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

(G) If the trustee has not accomplished the divestiture ordered under this Final Judgment within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent the report contains information that the trustee deems confidential, the report shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to Plaintiffs, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States in its sole discretion, after consultation with the Plaintiff States.

## VI.

## Notice of Proposed Divestiture

(A) Within two (2) business days following execution of a definitive divestiture agreement, Defendant or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify Plaintiffs of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendant. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

(B) Within fifteen (15) calendar days of receipt by Plaintiffs of such notice, the United States, after consultation with the Plaintiff States, may request from Defendant, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendant and the trustee shall furnish to the United States, which will share that information with the Plaintiff States upon any Plaintiff State's request, any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

(C) Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendant, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States in its sole discretion, after consultation with the Plaintiff States, shall provide written notice to Defendant and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendant's limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Defendant under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.

## Financing

Defendant shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII.

## Asset Preservation

Until the divestiture required by this Final Judgment has been accomplished, Defendant shall take all steps necessary to comply with the Asset Preservation Stipulation and Order entered by this Court. Defendant shall take no action that would jeopardize the divestiture ordered by this Court.

## IX.

## Affidavits

(A)  Within twenty (20) calendar days of the filing of the Proposed Final Judgment in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, Defendant shall deliver to Plaintiffs an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendant has taken to solicit buyers for the Divestiture Assets and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Provided that the information set forth in the affidavit is

true and complete, any objection by the United States in its sole discretion, after consultation with the Plaintiff States, to information provided by Defendant, including any limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

(B) Defendant shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X.

## Compliance Inspection

(A) For the purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant, be permitted:

> (1) access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant, relating to any matters contained in this Final Judgment; and

(2) to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant.

(B) Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendant shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

(C) If at the time information or documents are furnished by Defendant to the United States, Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendant ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

(D) The United States may share information or documents obtained under Section X with the Plaintiff States.

## XI.

## Treatment of Confidential Information

No information or documents obtained by the means provided in this Final Judgment shall be divulged by the United States or the Attorney General of Wisconsin, Illinois, or Michigan to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States or the Attorney General of Wisconsin, Illinois, or Michigan is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

## XII.

## Notification of Future Transactions

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendant, without providing advance notification to the Antitrust Division and to any Plaintiff State in which any of the assets or interests are located or whose border is less than 150 miles from any such assets or interests, shall not directly or indirectly acquire any assets of or interest, including any financial, security, loan, equity or management interest, in any Fluid Milk processing plant located in the United States, where the value of the acquisition is $3 million or greater.

Such notification shall be provided to the Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about Fluid Milk and School Milk processing. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest. Within the 30-day period after notification, representatives of the Antitrust Division may make a written request for additional information or documentary material relevant to the proposed acquisition as though 15 U.S.C. § 18a(e) were applicable ("Second Request"). In the event of a Second Request, Defendant shall not consummate the proposed transaction or agreement until thirty (30) calendar days after responding consistent with 15 U.S.C. § 18a(e)(2). Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder.

All references to the HSR Act in the proposed Final Judgment refer to the HSR Act as it exists at the time of the transaction or agreement and incorporate any subsequent amendments to the Act.

## XIII.

## No Reacquisition

Defendant shall not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIV.

## Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XV.

## Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

## XVI.

## Public Interest Determination

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States's responses to those comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any

-19-

Case 2:10-cv-00059-JPS   Filed 07/29/11   Page 19 of 20   Document 80

comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Judgment entered this 29th day of July, 2011.

JON W. SANFILIPPO
Clerk of Court

By:     s/ Nancy A. Monzingo
        Deputy Clerk